UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                    Case No. 3:12-cr-00566

        Plaintiff

v.                                                                            ORDER

Jerome Stokes,

        Defendant

Pending before the Court are the *pro se* Defendant's four motions to dismiss and the government's opposition thereto. For the reasons stated below, I find Defendant's motions to dismiss to be without merit and therefore they must be denied.

## BACKGROUND

On December 5, 2011, Jerome Stokes was indicted on four (4) counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C ); one (1) count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and one (1) count of use or carrying of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Following his arrest and at his arraignment on February 5, 2013, Magistrate Judge Vernelis K. Armstrong appointed the Federal Public Defender to represent the Defendant. The Defendant also entered a not guilty plea to all counts in the indictment.

At a subsequent detention hearing on February 11, 2013, the Defendant advised the Magistrate Judge he was a Moorish-American citizen who had been kidnapped and had an affidavit attesting to his sovereign status. (Doc. No. 9, pp. 51-52). He also noted that his name was King Al-Phahata-El-Bey-Ali and based upon that status, he demanded immediate release. (*Id*). The Magistrate Judge denied his request.

On March 1, 2013, I conducted a hearing on pending motions and objections to the detention order. At that hearing, the Defendant again advised the Court of his Moorish-American status which precluded him from being subject to the laws of the United States. (Doc. No. 14, pp. 4-8). The Defendant challenged the Court's jurisdiction over him and objected to the charges against him claiming he was not subject to the laws of the United States. He offered his affidavit to the Court in support of his claim. (*Id.* at pp. 29-33).

Following this hearing, on March 15, 2013, Defendant filed his first motion to dismiss for lack of jurisdiction (Doc. No. 17). A second motion to dismiss was filed by Defendant on April 5, 2013 (Doc. No. 22), to be followed by a notarized motion to dismiss with prejudice and for lack of jurisdiction/due process on April 9, 2013 (Doc. No. 23).

At a hearing on April 10, 2013, I set a briefing schedule regarding the pending motions by Defendant and granted the Government until April 24, 2013, to respond and Defendant until May 8, 2013, to file a reply. (Doc. No. 24). Additionally, after finding Defendant competent to stand trial, I granted Defendant's motion to proceed *pro se* and continued the appointment of the Federal Public Defender to act as stand-by counsel only.

Defendant's fourth motion in the form of an affidavit to dismiss for lack of jurisdiction (Doc. No. 25) was filed on April 22, 2013. Six additional exhibits or affidavits (Doc. Nos. 26, 27, 28, 29, 30, and 31) in support were subsequently filed by the Defendant.

The Government's response (Doc. No. 32) was filed on April 23, 2013. On May 6, 2013, Defendant filed an affidavit entitled, "Notice of Default" of Fact "Demand For Dismissal" (Doc. No. 33), which I will consider a reply. Having reviewed each of the four motions, attachments, and affidavits in support as well as the Government's response and the Defendant's reply, the matters are ready for adjudication by the Court.

## DISCUSSION

Each of the *pro se* Defendant's motions to dismiss echo the following common theme:

> Indigenous Moors have the rights to determine their own identity or membership in accordance with their customs and tradition. This does not impair the right of indigenous Moors or individual to obtain citizenship in the State in which they live they have the right to determine the structures and to select the membership of their institutions in accordance with their own procedures. No one shall be arbitrarily deprived of his nationality nor denied the right to change his nationality because no public policy of a state can be allowed to override the positive guaranteed of the U.S. Constitution.

(Doc. No. 23, pp. 1-2). Additionally, Defendant requests a hearing on these issues (Doc. Nos. 17 and 25), contending he has been denied due process in addition to challenging jurisdiction. In support of his motions, the Defendant submits several affidavits in support of his arguments. Finally, the Defendant submits a copy of the Treaty of Peace & Friendship 1787 Between Morocco and The United States, as support for his position.

I will first address the Court's subject matter jurisdiction before discussing jurisdiction and Defendant's exclusion or immunity from prosecution based upon Defendant's Moorish-American status.

A.  Subject Matter Jurisdiction

"The presence or absence of jurisdiction to hear a case is the 'first and fundamental question presented by every case brought to the federal courts.' " *Farmer v. Fisher*, 386 Fed. Appx. 554, 556 (6th Cir. 2010), *citing Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000). As noted by the

United States Supreme Court, "[f]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and by statute."  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

In the criminal law context, the following succinctly outlines the basis for subject matter jurisdiction:

> Subject matter jurisdiction, or the "court's power to hear a case," is straightforward in the criminal context.  Title 18 U.S.C. § 3231 grants "original jurisdiction. . . of all offenses against the laws of the United States" to the district courts.  To invoke that grant of subject matter jurisdiction, an " 'indictment need only charge a defendant with an offense against the United States in language similar to that used by the relevant statute.' "  That is the extent of the jurisdictional analysis: "[A] federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges. . . that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes."

*United States v. Scruggs*, __F.3d__, 2013 WL 1499584 (5th Cir. April 12, 2013)(footnotes omitted).

In this case, the indictment of December 5, 2012, charges Defendant with six criminal causes of action, all based upon federal statutes and committed within this district.  (Doc. No. 1).  As correctly noted by the government, venue of the action is addressed in the United States Constitution and  "such Trial shall be held in the State where the said Crimes shall have been committed."  U.S. Const. art. II, § 3.  Additionally, the Federal Rules of Criminal Procedure require that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in the district where the offense was committed."  Fed. R. Crim. P. 18.

As the Defendant offers no challenge to subject matter jurisdiction or venue of this Court, I now turn to his claim alleging lack of jurisdiction based upon his Moorish-American status.

B.   Alleged Lack of Jurisdiction Based Upon Nationality

In 2012, the 225th anniversary of the Morocco Peace and Friendship Treaty was recognized

4

by the United States Senate. On July 31, 2012, Senator Casey commemorated the anniversary noting the purpose of the treaty as follows:

> The Treaty of Peace and Friendship, whose anniversary we commemorate this month, provided for the United States' diplomatic representation in Morocco and open commerce at any Moroccan port on the basis of "most favored nation." It also established the principle of non-hostility when either country was engaged in war with any other nation.
>
> Most importantly, the treaty provided for the protection of U.S. shipping vessels at the time when most American merchant ships were at risk of harassment by various European warships.

158 Cong. Rec. S5727-01, 2012 WL 3100992 (daily ed. July 31, 2012). There is nothing in the treaty which supports the Defendant's position that his nationality exempts him from prosecution in the United States. A similar position was rejected by Judge Easterbrook where the defendant demanded compensation for every mention of his name before recognizing the court's authority. *United States v. James*, 328 F.3d 953, 954 (7th Cir. 2003). Not surprisingly, after discussing the background regarding Moorish nationals[1], Judge Easterbrook found the defendant's defense to be without merit.

A number of other courts have rejected the status of those claiming Moorish-American status to be exempt from the court's jurisdiction as without a basis in law. *See United States v. Burris*, 231 Fed. Appx. 281, 2007 WL 1891874 (4th Cir. 2007); *United States v. Roberson,* 207 Fed. Appx. 642, 646, 2006 WL 2077144 (7th Cir. 2006); *Ward-El v. Barrett*, 2012 WL 5929928 (E.D. Mich. 2012); *Jackson-El v. State and Federal Plaintiffs in General*, 2011 WL 1584606 (W.D. Mich. 2011); *Allah El v. District Attorney for Bronx County*, 2009 WL 3756331 (S.D.N.Y. 2009). *See also Pitt-Bey v. District of Columbia*, 942 A.3d 1132, 1135-36 (D.C. 2008)(rejecting diplomatic immunity defense to criminal charges).

---

[1] " This view of legal obligations is espoused by the many adherents to the Moorish Science Temple, which was founded in 1913 by prophet Noble Drew Ali. Moorish Science is a heterodox Islamic sect based on teachings of Drew and his 'Seven Circle Koran.' It is a tenant of Moorish Science that any adherent may adopt any title, and issue any documents, he pleases. Drew told his followers that they are not U.S. citizens and distributed 'Moorish Passports.' Some members of this sect hand out what they call 'security agreements' that purport to oblige strangers to pay hefty sums for using the members' names, which they deem copyrighted under their private legal system." 328 F.3d at 954.

Likewise, Defendant has not offered proof to establish he has voluntarily relinquished or renounced his citizenship under Section 349(a)(5) of the Immigration and Nationality Act, 8 U.S.C. § 1481(a)(5). Even if Defendant were able to show he had renounced his citizenship, his status as a Moorish-American does not require him to be exempt from application of the laws of this nation. Aliens residing in this country must also abide by obedience to the laws of the United States. *Leonard v. Ely*, 151 F.2d 409, 410 (10th Cir. 1945).

The Government has proffered a copy of the Defendant's birth certificate which establishes his status as a U.S. citizen. Therefore, absent a showing he is entitled to any other type of immunity from prosecution, I find the Defendant's challenge to the Court's jurisdiction based upon his claimed status as a Moorish-American is without a basis in law and is without merit.

## CONCLUSION

Having duly considered the arguments presented, the *pro se* Defendant's motions to dismiss (Doc. Nos. 17, 22, 23, and 25) are denied and his request for hearing on these issues is denied as moot.

Finally, a pretrial is scheduled for Friday, June 7, 2013 at 1:30 pm.

So Ordered.

                                                         s/ Jeffrey J. Helmick
                                                         United States District Judge